UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

U.S. SECURITY ASSOCIATES, INC.,

      Plaintiff,                            Case No. 05-73931

v.

                                       Hon. Chief Judge Bernard A. Friedman
                                       Magistrate Judge Steven D. Pepe

ADONIS WADE, et al.,

      Defendants.
_____/

## ORDER REGARDING DISPUTED DISCOVERY ISSUES RESULTING FROM DENIAL OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER (Dkt. #12)

Defendants' Motion For Protective Order was referred for hearing and determination pursuant to 28 U.S.C. 636(b)(1)(A). An in-person hearing was held on December 14, 2005, and the Defendants' motion was denied, allowing discovery to proceed. At the hearing it was anticipated that there may be some disputes over the exchange of discovery requests that would follow, and the undersigned agreed to hold a hearing to resolve any such disputes upon request. As anticipated, such a hearing was requested and held on February 1, 2006.

In brief, this matter involves Plaintiff's allegation that defendant Prudential is, or was at the relevant time, owned and operated by Greg Weir who also owned and operated Progressive, a company whose assets, including its customer lists and contracts, Mr. Weir sold to Plaintiff. Mr. Weir agreed not to compete with Plaintiff nor solicit Plaintiff's clients or employees at the time of the asset purchase. After the asset purchase was completed, Prudential, with the help of Mr. Weir, began competing with Plaintiff and soliciting its clients and employees. Defendant Wade was employed by Plaintiff, resigned his employment on or about September 2, 2005, and allegedly engaged in competition with Plaintiff in violation of his employment agreement. Defendants argue

that Mr. Wade did not sign and is not bound by the employment agreement at issue and Prudential was owned and operated by another person, Patricia Schultz, at the relevant time.

**I.      Plaintiff's Discovery**

**A.**      Defendant Wade shall supplement his answers to Plaintiff's First Interrogatories and Plaintiff's First Production of Documents on or before February 21, 2006, as follows, unless otherwise indicated:

**1.      *Interrogatories***

Interrogatory No. 1 - describe your document retention policy and steps taken, if any, to retain documents after receiving notice of this dispute, including any written or oral instructions given regarding retention.

Interrogatory No. 2 - subject to a protective order providing attorney eyes only protection, produce a list of all customers solicited since leaving Plaintiff's employment based on recollection and any records available.  Plaintiff's counsel shall review the customer list and compare such to Plaintiff's customer list.  Plaintiff's counsel will then generate a list of customers that Plaintiff contends are "at issue" in this matter as having been improperly solicited and falling within the protection of the employment agreement, and will provide a copy to Defendant's counsel.  The list of "at issue" clients may be shared with the parties.

**2.      *Requests for Production***

Request to Produce Nos. 2, 4 & 6 - Inquire and disclose whether back-up information was

checked prior to previous answers and provide verification[1] that all responsive documents have been produced.

Request to Produce No. 3 - produce requested documents for the 2005 tax year.

Request to Produce Nos. 9 &10 - produce requested documents to the Court under seal to Deputy Clerk William Barkholz for an *in camera* review for a determination regarding production to Plaintiff.

Request to Produce No. 13 - produce the requested documents for the period from January 1, 2005, through January 31, 2006, subject to a protective order.

      **B.**     Defendant Prudential shall supplement its answers to Plaintiff's First Production of Documents, Plaintiff's Second Production of Documents and Plaintiff's First Interrogatories on or before February 21, 2006, as directed or unless otherwise indicated below:

### 1. *Plaintiff's First Request for Production*

Request to Produce Nos. 2, 7 & 8 - these requests are resolved with the production of the customer list by Defendant Wade in response to Interrogatory No. 2, as discussed above.

Request to Produce No. 9 - Plaintiff shall produce to Prudential a list of its relevant employees that have terminated their employment and the date of termination. Prudential shall indicate which, if any, of those persons worked for Prudential at any time subsequent to the termination.

---

[1] Whenever the undersigned has ordered a verified statement or attestation the witness may provide either: (i.) a sworn and notarized declaration; or (ii.) a statement subscribed and dated by the witness, as true under penalty of perjury, in a form authorized under 28 U.S.C.A. § 1746.

Request to Produce Nos. 11 & 16 - produce requested documents to the Court for an *in camera* review.

Request to Produce No. 23 - produce the requested documents for the period from January 1, 2005, through January 31, 2006, subject to protective order.

### 2. *Plaintiff's Second Request for Production*

Request to Produce Nos. 2-9 & 11 - Plaintiff's counsel will identify the various entities or other names Greg Weir is alleged to have in interest in or operate under (the "also known as" or "AKAs").  Prudential, by Patricia Schultz or another authorized agent, shall review the documents specified in each of these requests and either: (a.) verify that Mr. Weir and/or the AKAs are not mentioned in the document nor involved, either directly or indirectly, with the underlying transaction; or (b.) produce any documents about which such a verification cannot be made. Prudential also shall immediately provide Mr. Weir's name and the list of AKAs to the person or entity responsible for preparing its 2005 tax.  At the completion of the preparation, or by no later than May 1, 2006, this person shall be instructed to review the documents related to Prudential's 2005 tax filings and either: (a.) verify that neither Greg Weir nor the AKAs are named, nor directly or indirectly involved in any document, to the best of that person's knowledge and belief; or (b.) compile any documents  about which such a verification cannot be made for production to Plaintiff and defense counsel.

### 3. *Interrogatories*

Interrogatory No. 4 - Prudential shall verify that no consideration was paid for the transfer of Prudential from Greg Weir to Patricia Schultz in 2005.

Interrogatory Nos. 5 & 6 - Prudential shall respond to these requests regarding any

4

information or affiliations that involve, either directly or indirectly Greg Weir and/or the AKAs.

<u>Interrogatory Nos. 9 & 10</u> - describe in detail Prudential's electronic and hard copy document retention policy and steps taken, if any, to retain documents after receiving notice of this dispute, including any written or oral instructions given to employees regarding document retention.

<u>Interrogatory No. 11</u> - subject to a protective order providing attorney eyes only protection, Prudential shall produce a list its customers. Plaintiff's counsel shall review the customer list and compare such to Plaintiff's customer list. Plaintiff's counsel will then generate a list of customers that Plaintiff contends are "at issue" in this matter as having been improperly solicited, and will provide Defendant's counsel with a copy. The list of "at issue" clients may be shared with the parties.

**II.     Defendant's Discovery**

Of great contention during the hearing was Defendants' argument that they be allowed to discover a great deal of information regarding Plaintiff's customers (including those not alleged to have been solicited by Defendants), its customer turnover rates, its business plans and financial data on the theory that this information is discoverable because it is relevant to the issue of calculating damages. The theory being that if liability is assumed, for the sake of argument, but it can be shown that Plaintiff lost no greater percentage of customers in the time period in which liability might attach than it normally does as a result of regular customer turnover, then Plaintiff cannot prove lost profits.     At the hearing the undersigned undertook to explain that it was highly unlikely that such evidence could reduce damages if Defendants were found liable for breaching the non-compete or non-solicitation agreements and/or tortious interference. In fact, in researching the law on this subject the undersigned could find no federal or Michigan case in which a defendant found liable

for breaching a non-compete clause or tortiously interfering with a relationship was allowed to reduce its liability by showing that the plaintiff would have lost the relationship anyway, or would have lost a different relationship if it had kept the one with which the defendant interfered.

The Restatement of Torts 2nd explains that the damages for interfering with a contract is the pecuniary loss of benefits from that contract, among other things, and goes on to explain in the comment that damages are based in tort and not on ordinary contract principles:

> (1) One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
> (a) the pecuniary loss of the benefits of the contract or the prospective relation;
> (b) consequential losses for which the interference is a legal cause; and
> (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.
> (2) In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment.
> Comment:
> a. This Section states only the rules applicable to the recovery of compensatory damages. Since the tort is an intentional one, punitive damages are recovered in these actions under appropriate circumstances. On the rules governing the award of punitive damages, see §§ 908 and 909.
> b. Whether the interference is with an existing contract or with a prospective contractual relation, one who becomes liable for it is liable for damages for the pecuniary loss of the benefits of the contract or the relation. In the case in which a third person is prevented from performing a contract with the plaintiff, the plaintiff may recover for the loss of profits from the contract. When it is the plaintiff himself who is prevented from performance of his contract with a third person, he may recover for expenses to which he is put or for other pecuniary losses incurred in making his performance good. And when the defendant's interference is with prospective contractual relations, the plaintiff may recover for the loss of profits to be made out of the expected contracts.
> c. A major problem with damages of this sort is whether they can be proved with a reasonable degree of certainty. This matter is discussed in general in § 912; see Comments d and f for specific discussion of loss of profits and chances for gain. If the question is whether the plaintiff would have succeeded in attaining a prospective business transaction in the absence of defendant's interference, the court may, in determining whether the proof meets the requirement of reasonable certainty, give

>due weight to the fact that the question was "made hypothetical by the very wrong" of the defendant. Sometimes, when the court is convinced that damages have been incurred but the amount cannot be proved with reasonable certainty, it awards nominal damages.
>d. The action for interference with contract is one in tort and damages are not based on the contract rules, and it is not required that the loss incurred be one within the contemplation of the parties to the contract itself at the time it was made. The plaintiff can also recover for consequential harms, provided they were legally caused by the defendant's interference.
>The tests for legal causation for the tort of interference with a contract of prospective contractual relation, like the tests for determining when an interference is improper (see § 767), have not been reduced to precise rules. By analogy to the rules for legal causation for negligent physical injury, it is sometimes held that the particular loss need not be contemplated, expected or foreseen by the defendant. (Compare § 435). At other times, it is held that the loss must be expectable, by analogy to legal causation for the tort of deceit. (See § 548A). It seems likely that the issue in a particular case may be affected by some of the factors listed in § 767. Emphasis may be given, for example, to the means used (i.e., physical force or oral persuasion) and to the motive (e.g., intent in broad sense of knowledge of result, or sole purpose motivated by ill will).

REST 2d TORTS § 774A.

To the extent that damages related to the breach of contract claims would be subject to reduction for proof that certain customers would have terminated their relations with Plaintiff even in the absence of any alleged wrongdoing of any defendant, these proofs will need to be based on testimony by or relate specifically to such customer, and this is not amenable to statistical or other proofs related to overall and/or annual customer turnover rates.

Plaintiff shall supplement its responses to Defendant Prudential Protective Services' Combined First Request for Admissions And Interrogatories and Defendants' First Request For Production Of Documents on or before February, 21, 2006, as follows, unless otherwise indicated:

### 1. *Interrogatories*

Interrogatory No. 2 - the answer given is considered partially non-responsive and said portion will be stricken. The response shall now read: If Adonis Wade maintains that he did not

personally sign the Employment Agreement, the affidavit of Will Riley indicates that Adonis Wade knows the name of the person he authorized to sign the agreement on his behalf.

<u>Interrogatory No. 4, 5 & 6</u> - Plaintiff shall supplement its response to these requests on or before 30 days after Defendants file an answer to the Second Amended Complaint and again 30 days before the final pretrial order is due.

## 2. *Request For Production*

<u>Document Production Request No. 1</u> - Plaintiff shall produce, for one customer it alleges to have lost, those documents on which it intends to rely to support its claim for damages and an explanation of the method of calculation. Defendants may then determine what, if any, further documents or information is needed to verify or challenge Plaintiff's calculations. If the parties cannot agree on the production of this additional documentation or information then the matter may be brought back before the Court for additional instruction.

<u>Document Production Request Nos. 2 & 3</u> - Plaintiff shall produce the requested documents.

<u>Document Production Request No. 4</u> - Plaintiff shall make the requested documents available for Defendants' inspection. Defendants shall be entitled to identify for copying any documents they want, at their expense, and shall also pay a percentage of the costs of compiling the documents. The percentage of cost shall be based upon the percentage of documents they have copied compared to the approximate total number of documents.

<u>Document Production Request Nos. 5 & 6</u> - Plaintiff shall attest that it has produced all relevant documents in its custody or control.

<u>Document Production Request No. 9</u> - Plaintiff shall, under a protective order providing attorney eyes only protection, produce a copy of the asset purchase agreement showing information

regarding what customer lists and/or contracts were purchased.

Document Production Request No. 10 - Plaintiff shall, on or before March 28, 2006, produce all communications sent to *prospective* customers identified as "at issue" (as determined after reviewing the customer list produced by Defendant Wade, as discussed above) between May 2005 and the present.

Document Production Request No. 11 - Plaintiff shall produce to Prudential a list of its relevant employees who have terminated their employment since July 28, 2005, and the date of that termination.

Document Production Request Nos. 12 & 13 - Plaintiff's counsel shall review Plaintiff's relevant board meeting and meeting minutes for 2004 and 2005 and shall produce any documents which contain references to the relevant topics.

Document Production Request No. 14 - Plaintiff shall produce the daily log/activity sheets for those persons who have signed affidavits in support of pleadings in this matter and Will Riley. If Will Riley does not maintain a daily log or activity sheet then a copy of his electronic or hard copy diary, calender, appointment book, etc. shall be produced.

Document Production Request No. 15 - Plaintiff shall produce this information.

Document Production Request Nos. 16 & 17 - Plaintiff shall identify by specific category all confidential and/or trade secret information Defendant Wade is alleged to have had access to and will specify where and in what form the information was kept during the relevant time period and whether Plaintiff alleges Defendant Wade used the material improperly. If Plaintiff intends to introduce specific documents at trial the document must be introduced during the depositions in this matter, subject to a protective order.

Document Production Request No. 18 - Plaintiff shall supplement its response to this request on or before 30 days after Defendants file an answer to the Second Amended Complaint and again 30 days before the final pretrial order is due.

**III.     Order of Depositions**

The parties disagree about the order in which their outstanding deposition notices should be honored. Patricia Schultz deposition shall be taken first, followed in time by Will Riley. After that the parties shall alternate the order of the depositions to the extent that location and scheduling makes practicable. A corporate representative and/or attorneys for the parties are the only persons authorized to attend depositions.

SO ORDERED

Dated: February 6, 2006                              s/Steven D. Pepe
Ann Arbor, Michigan                                  United States Magistrate Judge

Certificate of Service

I hereby certify that a copy of this Order was served upon the attorneys of record by electronic means on February 6, 2006.

s/William J. Barkholz
Courtroom Deputy Clerk